Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                          1:19-cv-01209

Renzil Simon individually and on behalf of
all others similarly situated

                              Plaintiff

               - against -                                   Complaint

Campbell Soup Company

                              Defendant

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

        1.      Campbell Soup Company ("defendant") manufactures, bottles, packages, markets,

distributes and sells fruit and vegetable beverage blends with green tea extracts in the V8 +Energy

product line ("Products").

        2.      The Products are sold in regular, sparkling and diet, in cans including 8 and 12 oz,

nationwide to consumers from retail stores and websites, and from defendant directly.

        3.      The product line includes no fewer than fourteen (14) varieties.

| Regular | Sparkling | Diet |
|---|---|---|
| Peach Mango | Sparkling Orange Pineapple | Diet Strawberry Lemonade |
| Pomegranate Blueberry | Sparkling White Grape Raspberry | Diet Cranberry Raspberry |
| Orange Pineapple | Sparkling Blackberry Cranberry | |
| Black Cherry | Sparkling Kiwi Melon | |
| 100% Vegetable Juice | | |
| Strawberry Banana | | |

1

Tropical Green

Raspberry Vanilla

<u>Regular</u>                <u>Sparkling</u>                <u>Diet</u>

              

4.    "Energy drinks" are sought by consumers to feel more energetic, alert, focused, creative, and productive.

5.    These products have come under scrutiny for their harmful effects in part due to their high potential for abuse and excessive caffeine content.

6.    The active ingredient for the "energy" is caffeine, a central nervous system stimulant.

7.    Caffeine induces mental and physical changes associated with "energy": increase alertness, wakefulness, motivation, and motor activity; enhance physiological arousal, by activating sympathetic nervous system by increasing heart rate and blood pressure and the hypothalamic pituitary adrenal axis by increasing cortisol.

8.    It takes about 45 minutes for 99% of caffeine to be absorbed in the body, and the

2

discharge rate is steep – 50% percent within two hours.

9.      This fast metabolism of caffeine leads to drowsiness and fatigue, due to elevated

levels of adenosine, causing dopamine to be repressed – referred to as a "crash."

I.   Representations

10.     The Products provide 80 mg of caffeine (per 12 oz) and emphasize its source on the

front label and compare the caffeine levels to similar foods on the side label.

 

11.     The representations are that the caffeine in the Products will not produce the typical

"crash" associated with caffeine because its source is green tea, indicated in the ingredient list.[1]

---

[1] Peach Mango flavor.

**INGREDIENTS:** WATER, VEGETABLE JUICE (WATER AND CONCENTRATED JUICES OF SWEET POTATOES, CARROTS, YELLOW CARROTS), FRUIT JUICE (WATER AND CONCENTRATED JUICES OF APPLES, ORANGES, PEACHES), MANGO PUREE, NATURAL FLAVORING, CITRIC ACID, GREEN TEA EXTRACT (WITH NATURAL CAFFEINE FROM GREEN TEA), VITAMIN C (ASCORBIC ACID), SUCRALOSE, NIACINAMIDE (VITAMIN B3), PYRIDOXINE HYDROCHLORIDE (VITAMIN B6), THIAMINE MONONITRATE (VITAMIN B1), RIBOFLAVIN (VITAMIN B2), CYANOCOBALAMIN (VITAMIN B12).

12.     The "steady energy" claims are repeated and promoted in the marketing campaign.

 

# The V is for Vegetables.®

And *V8 +Energy*® is for steady energy with no regrets.

13.      It is false, deceptive and misleading to claim and/or imply the caffeine in the Products from green tea will last longer, be metabolized or absorbed at a different rate ("stead[il]y") and will not cause a typical caffeine crash from caffeine not derived from green tea.

14.    This claim is based upon faulty science, implausible studies and consumers' erroneous impressions, which the labels take advantage of.

15.    Tea is associated with calming and soothing effects in part because it's consumed

4

slowly (hot), by the cup, and has less caffeine per ounce than caffeinated beverages like coffee.

16. When tea is converted into a powdered extract, the caffeine content becomes higher since there is no water.

17. The belief in green tea's ability to provide "steady energy" is likely erroneously based on the presence of L-theanine, an amino acid found almost exclusively in tea.

18. Although caffeine is known to increase blood pressure, a high dose of L-theanine has been shown to inhibit these stimulating effects, wrongly characterized as "modulating" or "drawing out" the body's absorption and use of caffeine.[2]

19. However, theanine and caffeine have different receptor affinities, causing an additive instead of a synergistic effect.[3]

20. All reasonable scientists agree that metabolism of caffeine is not inhibited by other food substances and has an independent absorption rate.

21. Any studies purporting to support the Products' claims of "steady energy" are poorly designed, incredible and represent the view of a minority of scientists.

22. It is affirmatively false and misleading to claim caffeine from green tea provides "steady energy" when if anything, it provides less energy, due to the interaction with L-theanine and that to the extent its effect can be distinguished from caffeine, it impairs attention and energy.[4]

II. Misleading Statement of Identity - Failing to Accurately Describe Juice Type and/or Modifications

---

[2] Suzanne JL Einöther, et al. "L-theanine and caffeine improve task switching but not intersensory attention or subjective alertness." Appetite 54.2 (2010): 406-409.

[3] Chanaka N. Kahathuduwa, et al. "Acute effects of theanine, caffeine and theanine–caffeine combination on attention." Nutritional Neuroscience 20.6 (2017): 369-377.

[4] David A. Camfield, et al. "Acute effects of tea constituents L-theanine, caffeine, and epigallocatechin gallate on cognitive function and mood: a systematic review and meta-analysis." *Nutrition Reviews* 72.8 (2014): 507-522 (reviewing L-theanine's association with the inverse effects of caffeine, such as lowering blood pressure, lowering anxiety, and increasing relaxation).

23.    The Products all have statements of identity which purport to comply with the relevant regulations for naming beverages that contain fruit and vegetable juice.  21 CFR 102.33.

24.    For instance, the Sparkling Orange Pineapple is identified as "An orange and pineapple flavored beverage with a 34% juice blend of 5 vegetable and fruit juices from concentrate with green tea and other natural flavors."

25.    All of the Products, except for two, list concentrated sweet potato juice as the first ingredient – more of this component than any other component.

| Flavor | First Ingredient |
|---|---|
| Peach Mango | Concentrated Juices Of Sweet Potatoes |
| Pomegranate Blueberry | Concentrated Juices Of Sweet Potatoes |
| Orange Pineapple | Concentrated Juices Of Sweet Potatoes |
| Black Cherry | Concentrated Juices Of Sweet Potatoes |
| 100% Vegetable Juice | Concentrated Juices Of Tomatoes |
| Strawberry Banana | Concentrated Juices Of Sweet Potatoes |
| Tropical Green | Concentrated Juices Of Yellow Carrots, Sweet Potatoes |
| Raspberry Vanilla | Concentrated Juices Of Sweet Potatoes |
| Sparkling Orange Pineapple | Concentrated Juices Of Sweet Potatoes |
| Sparkling White Grape Raspberry | Concentrated Juices Of Sweet Potatoes |
| Sparkling Blackberry Cranberry | Concentrated Juices Of Sweet Potatoes |
| Sparkling Kiwi Melon | Concentrated Juices Of Sweet Potatoes |
| Diet Strawberry Lemonade | Concentrated Juices Of Sweet Potatoes |
| Diet Cranberry Raspberry | Concentrated Juices Of Sweet Potatoes |

26.    While juice refers to an aqueous liquid extracted or expressed from a fruit or vegetable, the more appropriate name for the concentrate sweet potato juice would include a descriptor such as "clarified" or "deionized" and the word syrup.

27.    Sweet potato juice is considered an alternative to high fructose corn syrup and sugar, but more palatable – literally and figuratively – to consumers who avoid these ingredients.

28.    One company that sells sweet potato juice describes it as ideal for applications targeting "your health-focused consumer, adding vegetable servings and a health halo."

29.    It is probable that the sweet potato juice may be deflavored because the identity statement states the juices are "flavored" by the named juices – i.e., "orange pineapple."

30.    Only if the base juices (incl. sweet potatoes) were stripped of flavor would the named juices be able to "characterize" the overall juice – otherwise there would not be enough of the named juices to sufficiently impart their flavoring attributes to the overall blend.

31.    As a result, the Products have misleading names because they fail to identify the nature of the modification to the sweet potato juice beyond the descriptor, "concentrate."[5]

32.    The Products also contain a false or misleading "No Added Sugars" claim.



33.    The Products contain other representations which are misleading and deceptive.

---

[5] 21 CFR 102.33(e) ("The common or usual name of a juice that has been modified shall include a description of the exact nature of the modification (e.g., 'acid-reduced cranberry juice,' 'deflavored, decolored grape juice'")).

34.     Excluding tax, the Products cost no less than $2.99 per 12 oz, a premium price compared to other similar products.

<u>Jurisdiction and Venue</u>

35.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

36.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

37.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

38.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

39.     A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

40.     Plaintiff is a citizen of Kings County, New York.

41.     John and Jane Doe plaintiffs are citizens of the other 49 states.

42.     Defendant is a New Jersey corporation with a principal place of business in Camden, New Jersey (Camden County).

43.     During the years 2017, 2018 or 2019, plaintiffs purchased one or more Products for personal consumption, for no less than $2.99 per 12 oz product, excluding tax, within this district and/or State.

44.     Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

45.     Plaintiff would purchase the Products again if there were assurances that the

8

Products' representations were no longer misleading.

Class Allegations

46.    The classes consist of all consumers in the following states:  all, New York who purchased any Products with actionable representations during the statutes of limitation.

47.    A class action is superior to other methods for fair and efficient adjudication.

48.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

49.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

50.    Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

51.    Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

52.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

53.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

54.    Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

55.    Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

9

56.   Plaintiff and John Doe plaintiffs representing other states, incorporates by reference all preceding paragraphs and asserts causes of action under the consumer protection statutes of all fifty (50) states, where John and Jane Doe Plaintiffs reside and have purchased the Products.

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.   California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and  Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e.   Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;

j.   Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§

51:1401, *et. seq.*;

q.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

57.    Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

58.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

59.    Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

60.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

61.    Plaintiff incorporates by references all preceding paragraphs.

62.    Defendant misrepresented the composition of the Products.

63.    Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

64.    This duty is based on defendant's purported position as a learned intermediary and

12

an entity which has held itself out as having special knowledge in the production and sale of beverages.

65.    Defendant negligently misrepresented and/or negligently omitted material facts.

66.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

67.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

68.    Plaintiff incorporates by references all preceding paragraphs.

69.    Defendant manufactures, packages, distributes and sells Products which purport to be described as capable of supplying steady energy whereby the caffeine absorption would be tempered by constituents of green tea, among other things.

70.    This warrants to consumers that caffeine in the Products does not result in a "crash" which is a typical result of a caffeine-enhanced beverage.

71.    The Products warranted to plaintiff and class members that they possessed functional, organoleptic, sensory, physical and other attributes which they did not.

72.    Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

73.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

74.    The Products were not merchantable in their final sale form.

75.    Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

76.   Plaintiff incorporates by references all preceding paragraphs.

77.   Defendant's purpose was to mislead consumers who seek products which have qualities aforedescribed in furtherance of health and consumption of natural sources of ingredients, like the caffeine from green tea.

78.   Defendant's intent was to secure economic advantage in the marketplace against competitors.

79.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

80.   Plaintiff incorporates by references all preceding paragraphs.

81.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3.   Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL and other statutory claims;

14

4.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5.  Such other and further relief as the Court deems just and proper.

Dated:   February 28, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119

1:19-cv-01209
United States District Court
Eastern District of New York

Renzil Simon individually and on behalf of all others similarly situated

Plaintiff

- against -

Campbell Soup Company

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 28, 2019

/s/ Spencer Sheehan
Spencer Sheehan